***********
The undersigned reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Ledford with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. At all relevant times, the Plaintiff was an employee of Defendant-Employer.
3. The carrier on the risk is AIG Claim Services, Inc.
4. Plaintiff's average weekly wage is $579.44, which yields a compensation rate of $386.31.
5. Plaintiff claims to have received short-term disability benefits totaling $1,318.77. Defendants dispute this amount.
6. Plaintiff continues to work for Defendant-Employer at his pre-injury job duties.
7. Commission Proceedings consisting of 9 pages were received into evidence as Stipulated Exhibit 1.
8. Plaintiff's medical records consisting of 28 pages were received into evidence as Stipulated Exhibit 2.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty-one (51) years of age, with a date of birth of October 31, 2954. Plaintiff has a high school education and special skills or training. The majority of plaintiff's work experience has been in the furniture manufacturing industry. Plaintiff began working for defendant-employer as an "assembler" on November 18, 2002.
2. Prior to his employment with defendant-employer, plaintiff worked for Baker Furniture for approximately twenty-one (21) years. *Page 3 
During his employment with Baker Furniture, plaintiff assisted in the construction of end tables, cocktail tables, and dining tables. During his employment, plaintiff developed bilateral injury to his hands and elbows. He underwent surgeries and filed a workers' compensation claim for those injuries. Plaintiff received a permanent partial impairment rating of nineteen percent (19%) to his left arm and twenty percent (20%) to his right hand and the claim was settled.
3. Plaintiff described his job duties as defendant-employer as requiring frequent and repetitive use of his hands and arms all workday long to handle tabletops. Plaintiff would frequently extend his arms out away from his body in order to lift, carry, pull, flip and push the tabletops. Plaintiff estimates that he spent at least an hour total each workday since November 18, 2002 until approximately March 2004 using his left hand at or above eye level to lift, carry, pull, flip or push the tabletops. The tabletops plaintiff handled varied in weight and physical dimension.
4. From November 2002 through October 2003, plaintiff worked about seven hours per day, five days a week, lifting tabletops weighing ten to one hundred pounds and placing them into cardboard cartons, at a rate of about thirty per hour.
5. From November 2003 to March 2004, plaintiff performed three different primary tasks as follows:
a. Three mill (cover tabletop edges): Plaintiff would stand using his hands and arms to lift tabletops weighing ten to one hundred pounds into position so a machine could put a coating on the sides of the tops' edges. Plaintiff would use his arms to exert force to hold the tabletop in place.
b. Vinyl cover on tabletops and edges: Plaintiff would lift each top and place it flat on the table, then use a glue gun to spray glue on the tops. He would then put vinyl on the tabletop. *Page 4 
c. T-Mold (plastic or rubber edge banding around top edges): Plaintiff would lift and carry the tabletop to the T-mold table. Plaintiff would push the tabletop against a round cylinder that vibrates to force the T-mold in groove on the edge of the tabletop.
6. The Full Commission finds plaintiff's description of his job duties accurate and credible.
7. About January 2004, plaintiff developed left shoulder pain, which gradually grew worse. In March 2004, plaintiff saw his family physician, complaining of left shoulder pain. Plaintiff's family physician referred him to Dr. Michael King, an orthopedic specialist in Winston-Salem, for evaluation.
8. Dr. King examined Plaintiff on April 8, 2004. Plaintiff described the work he was doing at the time and told Dr. King that his work made his left shoulder pain worse. Dr. King diagnosed probable superior labrum anterior posterior (SLAP) lesion, AC joint osteolysis and synovitis, biceps tendonitis and left shoulder impingement syndrome. Dr. King ordered an MRI and arthrogram.
9. On April 9, 2004, Plaintiff reported to his supervisor that he was experiencing left shoulder pain, which he believed was due to his job duties. A Supervisor's Report of Accident/Injury or Near Miss was completed that same day.
10. On April 29, 2004, Plaintiff returned to see Dr. King. At that time, Dr. King interpreted plaintiff's left shoulder MRI and arthrogram results, which confirmed his prior assessment of left shoulder impingement syndrome and also showed a partial tear of the rotator cuff and SLAP lesion. Dr. King recommended left shoulder arthroscopic surgery. *Page 5 
11. Plaintiff continued working for the defendant-employer until undergoing left shoulder surgery. On July 13, 2004 Dr. King performed left shoulder arthroscopic subacromial decompression surgery with a post-surgical diagnosis of left shoulder impingement syndrome.
12. On August 23, 2004, plaintiff returned to lighter duty work with defendant-employer for approximately thirty days. After that he returned to his regular duties.
13. As assessed by Dr. King, by May 5, 2005, plaintiff reached maximum medical improvement from his left shoulder impingement syndrome condition. Plaintiff retained a ten percent (10%) permanent partial impairment to his left arm as a result of his left shoulder impingement syndrome condition.
14. Dr. King opined, and the Full Commission finds, that plaintiff was placed at an increased or greater risk of developing left shoulder impingement syndrome as a result of his job duties for defendant-employer as a furniture assembler than members of the general public or employees, in general, not equally exposed.
15. Dr. King further opined, and the Full Commission finds, that plaintiff's work duties with the defendant-employer significantly contributed to the development of plaintiff's left shoulder impingement syndrome condition.
16. The greater weight of the competent evidence of record shows that as a result of plaintiff's repetitive use of his left upper extremity to perform his job duties for defendant-employer, plaintiff by early 2004 developed the occupational disease of left shoulder impingement syndrome arising out of and in the course of his employment.
17. During the period from July 13, 2004 through August 22, 2004, plaintiff was unable to earn wages in any employment due to his left shoulder surgery and recovery. *Page 6 
18. Plaintiff applied for and received benefits under a Prudential Financial short-term disability plan solely funded by defendant-employer. Plaintiff signed a Reimbursement Agreement in which he agreed to reimburse Prudential the amount of short-term disability benefits paid to him in the event that he should receive any workers' compensation benefits arising from this claim.
19. Defendants presented no evidence to contradict the opinions expressed by Dr. King and have failed to show that there was a reasonable basis to deny this claim. Defendants have defended this matter without reasonable ground.
20. Plaintiff's counsel has represented and it is found that he has devoted at least twenty (20) hours to prosecuting plaintiff's claim before the Deputy Commissioner and an additional four (4) hours prosecuting plaintiff's claim before the Full Commission, and has requested a fee at the hourly rate of $200.00, which is found to be reasonable.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff's contraction and development of the occupational disease of left shoulder impingement syndrome was due to causes and conditions characteristic of and peculiar to his employment with defendant-employer. Plaintiff has established that his left shoulder impingement syndrome was caused by the duties of his employment and qualifies as an occupational disease pursuant to N.C. Gen. Stat. §97-53(13).
2. Defendants have failed to provide a copy of the *Page 7 
short-term disability benefits insurance contract covering plaintiff. Defendants otherwise should not be granted a credit for short-term disability benefits paid to plaintiff by Prudential pursuant to the group policy paid for by defendants because plaintiff has signed a contract and is obligated to repay these benefits to Prudential in the event of a recovery of worker's compensation benefits. The Full Commission declines to approve a credit pursuant to N.C. Gen. Stat. § 97-42.
3. Defendants are responsible for providing all reasonably necessary medical treatment for plaintiff's left shoulder impingement, which would reasonably tend to effectuate a cure or give relief from his condition. N.C. Gen. Stat. §§ 97-2(19), 97-25.
4. Plaintiff's average weekly wage of $579.44, yields a compensation rate of $386.31.
5. During the period of July 13, 2004 through August 22, 2004, plaintiff was unable to earn wages in any employment due to his occupational disease. He is entitled to payment of temporary total disability benefits during this period. N.C. Gen. Stat. § 97-29.
6. Plaintiff retains a ten percent (10%) permanent impairment of his left arm as a result of his occupational disease, and is entitled to benefits pursuant to N.C. Gen. Stat. § 97-31(13).
7. Defendants have defended this matter without reasonable ground, such that an attorney's fee should be approved pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff compensation for total disability benefits at the rate of $386.31 per week during the period July 13, 2004 through August 22, 2004.
2. Defendants shall pay plaintiff twenty-four (24) weeks of benefits at the rate of $386.31 per week as compensation for his ten percent (10%) permanent impairment to his left arm, beginning May 5, 2005. Such benefits have accrued and shall be paid in a lump sum.
3. Defendants shall pay all medical compensation incurred or to be incurred by Plaintiff as a result of his compensable occupational disease.
4. Defendants shall pay directly to plaintiff's counsel an attorney's fee of $4,800.00, in addition to the compensation being paid to plaintiff, as a cost of this proceeding.
5. Defendants shall pay all costs, including the above attorney's fee, and the entire mediator's fee.
This the 22nd day of January 2008.
 S/______________________
 DANNY LEE McDONALD
 COMMISSIONER
CONCURRING:
 S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER
 S/ ______________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1